Is it ready? May it please the Court, I'm Matthew Stigler on behalf of Marcus Good and I'd like to reserve four minutes for rebuttal. Multiple consecutive sentences for aggravated identity theft under Section 1028A arising from a single predicate offense are barred by the rule of lenity for the same reasons that such sentences are barred for gun possession under Section 924C. Let me ask you this, why don't we, with Diaz, it seems to me you have a very strong argument as to the first problem of Strickland. How is money purchased here, given the incredible volume of convictions at Citizens Bank? And I can ask Mr. Zawinul why it was treasured the way it was. But the District Court took certain things into consideration in imposing this sentence. Those things would have been taken into consideration no matter how the indictment was structured. It could have gotten to exactly the same sentence. So how is the demonstration of prejudice? Because the legal error here distorted the entire sentencing decision. The judge imposed a sentence of 126 months. And the range that the judge and all the parties at sentencing thought applied was a range from 70 months to 657 months. And so within that context, the 126-month sentence that the judge actually imposed appeared to be a relatively lenient sentence. A sentence that accounted for the significant mitigation arguments that he presented. You're just guessing about that. That's just a guess. I'm sorry? That's just a guess. That doesn't mean that it was not legal. Well, what we know, I mean, it's not a guess that it was a sentence at the bottom end of the range that the court understood to apply. But you're guessing what the judge was thinking. Right. The direct evidence that we have about the judge's reasons is she said that I lowered it a little bit from what it might otherwise would have been simply on the basis of his lack of prior criminal history. But we know what evidence was presented. But here's the point that I'm making, is that if the court had understood, had recognized the legal issue, it's not just a matter of saying, oh, okay, well, I'm going to peg it to three different counts instead of the three counts that I chose. Because the whole context for her decision then would have been different. Instead of 70 to 657 months, now it's 70 to 129 months. And so the 126-month sentence that she actually imposed, now it's just three months short of the maximum of what she applied. So the whole landscape for the sentencing decision is going to be different if the court had recognized the basis for the legal error. The court said that she was basing this on his role in the fraudulent scheme, the lack of remorse, and the impact on the victim. So even if you reduced down the universe of numbers she could choose from, those things wouldn't change. I guess you're arguing that if you look at it relatively, that where she might place him on that spectrum could have changed if she wasn't starting with the outward. Right. And, you know, again, we came forth with a – I mean, we were the ones who acknowledged that she was able to impose that same sentence. But that's not dispositive of the prejudice question. The prejudice question is simply is there a reasonable probability that if the issue had been raised that a less severe sentence might have been imposed. And here she had good reasons to impose that lesser sentence. And, you know, there's no guarantee if it goes back for resentencing it could be the exact same sentence all over again. That's a possibility. But that possibility doesn't foreclose prejudice because there were strong arguments there, and arguments which we can't know that she rejected, for example, the force of the mitigating evidence that he presented. But there was no affirmative indication that she considered that, that she'd weighed that. And it was substantial evidence. I mean, this is not the sort of normal history of a criminal defendant coming before a judge for criminal sentencing. What's your best case to show that this is ineffective assistance of counsel? In terms of deficient performance? Yes. Well, I think the principle of the control is Hinson versus Alabama. Because – and what that case says is that it's a quintessential example of deficient performance when you've got an issue that's fundamental to the case and counsel fails to perform basic research on that point. And so what happened here is that the overwhelming weight of the sentencing exposure that he faced, over 90% of the potential sentence that he faced derived from the 1028-A sentence. And so counsel had a duty to perform basic legal research into that fundamental issue. And if she'd done that research, then she's going to find B as – for example, if she sat down on her computer on the day of sentencing and done a Westlaw search for the phrase consecutive sentences, and looking in the Fifth Circuit – sorry, the Third Circuit in presidential opinions, the fifth case that's going to come up was the United States versus Diaz. It was right there. It was less than two years old. And so the basic research that she should have done on this fundamental issue would have led her quickly to Diaz. But Diaz is a whole lot different statute, right? Well, Diaz is a different statute. But the operative language is substantially identical. Both statutes turn on the meaning of this same idea of what does it mean to use an instrumentality during and in relation to a predicate crime. That's how 924C was written, and that's how 1028A was patterned on 924 in the same way. The verbs are a little bit different. One of them says transfers, possesses, or uses. The other one says uses, carries, or possesses. But the operative language is the same, and it's that language. It's like what does it mean to use something? That was the key interpretive issue. And so there's an ambiguity about did they mean that to use something, does that mean that each use is a separate crime, or does that mean that any use is a continuing crime? And the face of the statute didn't provide a clear answer to that. And, you know, that much is clear from looking at the statute, but Diaz, the holding of Diaz, points in that direction. But the legislative intent here does provide a clearer answer here because 1028A came second. It was enacted in 2004, and when Congress enacted 1028A, 924C had been in place in more or less its current form for two decades and had been broadly interpreted by the courts. There were at least nine circuits that had looked at what does this phrase mean to use during and in relation to. Nine circuits had looked at that, and seven of them had said it means that you're not allowed to impose multiple consecutive sentences arising from the same predicate. And so when Congress chose that language as the standard to use in 1028A, they were incorporating the interpretation that courts had already given. But that's not the rule of lenity. Now you're asking for specific interpretation as opposed to the rule of lenity. It gets you in the same place. We started out arguing the rule of lenity. Well, right, and the rule of lenity, that's full relief for us, and that's all that we need to ask for. I do think that the court could conclude that the legislative history might not have been clear the first time around in 924C, but because they adopted it against the backdrop of that previous interpretation, that it is clear enough, not just for an ambiguity finding in rule of lenity, but to actually decide the double jeopardy question. But the court doesn't have to answer it that way, and for purposes of my case, it doesn't make any difference. And so our position then is that at least the rule of lenity would apply, and Diaz helps to illustrate why. Diaz said that applying the rule of lenity is particularly appropriate in that case for two reasons. And the first reason was because we've got a statute that imposes mandatory consecutive sentences, and obviously that applies just the same in this case. Do you have any federal court decision that agrees with your position here that you interpret this statute in the same way that you do 924C? No. This is an issue of first impression. How can your counsel be ineffective? Because of this, you have to anticipate what the law is going to be in the future? And I acknowledge that's the strongest argument against our deficient performance, is that there wasn't a prior case that they could say, ah-ha, you should have pointed to that. But that's not dispositive of the question. The question is what's reasonable counsel going to do? Were there cases that went the other way that said that 1028A does not pose a double jeopardy problem? No, there weren't, and that's important. And so it's an issue that hadn't been decided previously. But if counsel had read Diaz, there's no reasonable alternative for counsel to take at that point and say, look, Diaz and the cases that it's citing, it's focused on what does it mean to use? What is this going in relation to mean? No counsel, no attorney who read that decision could reasonably say, well, you know, I don't think that this applies because the verbs are a little bit different in my statute or for some other reason. Any reasonable counsel who is aware of Diaz would have made an objection on that basis. There wasn't any downside to making that objection. There wasn't any risk, and there was an extraordinary benefit, because so much of this guy's sentence turned on his exposure under Section 1028A. What were the ranges again? You started out with the two ranges, 600 months to something. So the guideline range that the court understood to apply, because it didn't recognize the issue, was a low end of 70 months and a high end of 600 and something, 657. And that's what it thought the range was. But what the range actually should have been was still low end of 70 and a high end of 129. And he got 126. And he got 126. Thank you. Can I ask one more question? Sure. And that is, it's a non-precedential opinion, but the decision from our court in the United States versus Fudge, are you familiar with that? I'm sorry, United States versus? Versus Fudge. No. And that dealt with this same type of context, that is, 1028A violations with a predicate offense of bank fraud. I'm not familiar with it, but I'd be happy to submit something on it. Okay, thank you. This is not the Fudge who's in charge of the Ministry of Magic, I assume? No. Okay, good, good, okay. Thank you, Your Honor. May it please the Court, Robert Stobbs on behalf of the government. Mr. McSweeney, is this Mr. McSweeney's first time interviewing you? Yes, sir. I have the privilege to have the United States Attorney here. Don't blow it, then. You've also got interns from your office who have heard all this talk about what a great law advocate you are, so no pressure. I'll try to get through it. Well, Your Honor, we have three points to make, and I'll go in, of course, whatever order the Court prefers. But it's our view that 1028A does support the manner in which the indictment was charged here, that Second Counsel was not ineffective in not making an argument, that, as my friend Mr. Stigler just said, was an issue of first impression. And finally, and very strongly, the defense cannot maintain their burden of showing prejudice. Why was it drafted? And I'm pretty sure that you didn't draft it. You say at page 30 in your brief that you did not draft it for obvious practicality or obvious reasons, but I couldn't figure out what was impractical about drafting this in a way that would have avoided this situation, not putting everything under Citizens Bank. Sure. So I didn't personally draft it, but this is consistent with the way my office has charged 1028 charges. We have viewed it, and you'll correct us if we're wrong, but we have viewed it as a use of a person's identity is a separate count as opposed to a fraud on a bank, which may involve the identities of numerous people. And so we charged it as a fraud on each bank. There were six banks that were charged. He was acquitted on one. But then we charged a large number of individuals who were hurt as a result of the identity theft. Some of them, most of them, happened to be Citizens Bank. A couple were involving other banks. But those were individuals we could prove that their identity was stolen. As Ronna knows, according to the Supreme Court, we have to prove that the defendant knows that it's a real person in order to convict on this count. And so that's how it was charged. It's our view that these are separate counts. And one important thing to note in looking at the charge, and, again, you'll fix it if we're wrong about this, but it's charged, this court has held, that each execution of a bank fraud is separate. And, similarly, each execution of identity fraud is separate. And that's an especially compelling point in the context of identity fraud because the purpose of this statute is not to protect banks. The banks are doing fine. The bank fraud statute, we prosecuted what happened. But this statute is aimed at crimes against individuals. And a particularly nasty crime involving identity theft that, as witnesses told this district court, has a profound effect. So that's what's in our mind, is that this does charge an individual use of a person's stolen identity. And that's why it was presented that way. And we believe that that's a correct interpretation of 1028A. This is different from 924C, to answer Judge Seiler's question. 924C, we see it all the time. The drug dealer carries a gun down the street, and he's convicted of both the drug offense and the 924C charge. But here, again, we're dealing with two different victims. And I think it's incumbent on the court to carefully look at that when you look at the statute. Now, we've acknowledged that if you look at the legislative history here, that the congressmen and women did not address this specific issue. But everything about the House report that we cite makes it very clear what Congress had in mind here, which is we want an additional punishment for identity theft. The only debate that took place in Congress, if you look back at the record, was there was one congressman who said, I'm giving my standard objection, which is I don't like mandatory minimums. That's my objection to this bill. And the sponsor, who I think was Representative Sensenbrenner, said, look, we just see a lot of courts that aren't adequately addressing this. That if they were following the guidelines and if they were giving the sentences that I think is appropriate, maybe we wouldn't need this mandatory minimum. But we need this because identity theft is such a pernicious crime, and we need to make sure that it's punished. So everything about that legislative history suggests that we're not in 924C land here. We're in a place where Congress wants the use of a person's stolen identity to result in an incremental punishment. There's one other really important difference with 924C, and that's the punishment structure. As Mr. Stigler noted, this court in Diaz eventually resorted to the rule of lenity, where you throw your hands up and say, we just can't figure it out. But the deciding factor there that pushed this court to that place was the penalty structure of 924C, where for the first offense, you get a five-year mandatory. And for the second offense, you get a mandatory consecutive 25-year sentence. And so if you can charge each 924C separately for one drug offense, say you have a drug conspiracy that lasts for a year, the fellow just has to walk out of his house a few times and he's looking at a life sentence when he's carrying a gun. And this court said, we're not going to presume that Congress is looking at penalties like that to say that each 924C can rest on the same predicate. This statute is totally different. This statute is a two-year mandatory. But Congress then specifically says the judge can run the two-year mandatories concurrently. So Congress is anticipating exactly the situation we're looking at here. It's not draconian, but it's giving a district court discretion to address more serious cases. And this is a more serious case. So it's only in one instance that it would be mandatory for a two-year consecutive sentence. Exactly, Your Honor. Provided that the bank fraud claim was charged and there was conviction on it. Because you don't have to charge bank fraud. Exactly, you don't have to charge anything, and that's another important point. You can charge something. You can charge the 1024 or 1028. You don't have to charge the predicate. But you do have to show that it was in relation to a bank fraud. That would be one of the elements, and the court would instruct on that. So you're right. The first two years is mandatory, one of the counts. But then after that, you can have 10 counts, you can have 100 counts. The court has discretion. And so Congress is acknowledging we're not going to just slam somebody, but we want to give the district court discretion to handle cases appropriately. Totally different statute from 924C. And so then when you look at the language of this statute and you see that it says during and in relation to the use, or transfer of possession to use of a means of identification of another person, that's not talking about a bank. That's talking about a person whose identity was stolen. And so if you look at the counts, all of the counts here, they are different people. We did not charge the same identity theft as supporting multiple 1028A counts. These are dozens of individual people whose identity was stolen by this defendant and his cohorts. And then a lot of bad things came from that, as was explained to the court at sentencing. So the court could consider that. Let's assume that we end up going with the rule of lenity, not see us when we would, but assume that we do. That's why I got to the prejudice issue initially. The court could take all that into consideration, try to, quote, send a message in terms of how horrendous these crimes are, how they totally destroy people's lives, and impose a sentence accordingly. But that doesn't necessarily mean that the court shouldn't be provided if we would accept the rule of lenity argument with a more accurate definition of what the universe is that the judge has to decide within, as it should be higher toward the upper end of the range as it was here, should be toward the lower end of the range. Shouldn't the court have a more accurate starting point so that the court discretion could be exercised in a way which puts the defendant within a continuum of offenses that reflect the judge's concern for the offender and the offense? Sure. So the court, of course, should have an accurate calculation of the guideline range and of the statutes in deciding what the penalty should be. We're not disputing that, but instead we're here on habeas. This is an extraordinary remedy. This isn't a question of what should the district court do with ordinary sentencing. We're seven years past sentencing here. The question is, does he meet his burden on this very substantial ineffectiveness test? And he does not. So on the first prong, just one more sentence. Besides the fact, I think, where I've made an argument on the law, the fact remains this is an issue of first impression. What about Vanderpool as to your first impression argument? Vanderpool, where you said it doesn't have to be exactly the same statute to define ineffectiveness concerning the reason issue. Well, Vanderpool said that a number of courts, not the Third Circuit, but other appellate courts had already held that a statute like this was unconstitutional. We don't have that here. We don't have any precedent at all regarding identity theft. And then Vanderpool continues to say, okay, but maybe there's a strategic reason, and so we're going to send it back and see what counsel has to say. But here you have a clean slate, and the law is clear on that, that counsel does not have a responsibility to predict the law or predict changes in the law. So that's our position on the first prong. Let me talk about the prejudice prong before I run out of time. Again, because we're on habeas, it's the defendant's burden to show a reasonable probability that there would be a different sentence. That's a lot different from a possibility. If you ask me, is it possible the judge would give a different sentence, of course I would have to say yes. But that's not the standard. This is a case in which the burden is very important. And the only thing that my friend has suggested is that, well, if she saw that the range was capped at 129, even though the statutory maximum is far, far higher, then she would have given some credence or more credence to our mitigation argument. He had a tough childhood, he was homeless, went through all this trouble, grows up to be a guy who steals everybody's identity. That was the mitigation argument. The fact of the matter is the district court specifically rejected that argument. And Mr. Singler, I think this morning when he said we don't know what her view is on that, he overlooked one portion of the record. It's page 123 of the appendix during the sentencing. And this is what Judge Crowder said. She said, the second most important thing we look at are your personal history and your characteristics. I understand that you have not had anything close to an enviable life. But you know what, Mr. Goode, there are a lot of people who have, as Mr. Maris reminded us, Maris was one of the victims who had a really terrible experience because of the identity theft. As Mr. Maris reminded us, there are a lot of people who have had a lot less than you have had, even the hardship you've had, who have managed somehow not to commit crimes. So I really do not see a tough life or a less than enviable childhood as being any justification or excuse. It may be an explanation, but it's certainly not an excuse. That's it. As Judge Berry often said here, game, set, and match, the judge has told us that she gave this no credit whatsoever. What she did do is she gave an 11-page explanation of the sentencing. And I know you look at as many sentencing transcripts as I do. This is a model of sentencing in the post-Booker year. She goes systematically through the 35-53A factors. She talks about what's important, which is the harm that was done to the victim, the scope of this, Mr. Goode's complete lack of remorse. She said to him at one point, you may care less than you looked when you were hearing these witnesses, but I can't imagine that you do, was her comment. The effect he had on his co-defendant, this young woman who he corrupted and brought into this criminal case. And when she did all this, she actually never mentioned, she calculated the range, but then she didn't mention it again. She talked about the statutory maximum. She started off by saying the maximum she gave him individually, if you add it all up, I think it was 205 years. And she said we're not giving you the maximum, but there has to be a significant sentence here. If their argument is correct regarding 1028A, that statutory maximum drops from 205 years to 161 years. That's the difference here. This isn't what's affecting her judgment. She goes through this very careful judgment. She outright rejects the mitigation argument. Let's get back to the objective, whether the performance was objectively unreasonable. To what extent should we consider the fact that this was a pretty common way to calculate the guideline range in these kinds of cases, that is to take your predicate offenses, calculate the guideline range, group them together, calculate, and then add in all those consecutive terms to come up with your maximum that goes way out there. And it still is. And I don't recall Fudge precisely, but I think that's mentioned there. And like Mr. Stigler, I'm happy to address that also. But, yeah, that is the standard way, and it will still be the standard way. Even if this court were to rule that 1028A requires a separate predicate, if the government really wanted to have 50 of these predicates, I'm not saying that we do in most cases, but if we did, it would still be done. What you would do is you wouldn't just charge one bank fraud scheme and then 50 identity thefts. You would charge 50 individual executions, which this court's decision says you can do with bank fraud, and then we would have for one breach victim of identity theft. So nothing changes. And that's how we drove the sentence. If you read the sentencing transcript, she did what she's supposed to do. She looked at the whole of the facts in the case before her, and she said 126 months is right. So that brings us here. And the question again is not a possibility. Is there a reasonable probability that she would have done something different? That's their burden, and I would respectfully submit that it's not met, unless the court has further questions. Thank you very much, sir. Thank you. Mr. Steger? The first point I'd make is that the district court decided this case purely on the basis of the underlying legal issue. There's no discussion in the district court's ruling of the deficient performance or prejudice, and the overwhelming weight of the government's briefing on appeal has been focused on the underlying legal issue. Fifteen pages on that, three on deficient performance, three on prejudice. So at a minimum, the court ought to send it back to the district court to address those fact-bound issues in the first instance. Give me that again. Which issues are you saying we should send it back to address? To decide the legal issue, the double jeopardy issue, correct that error, and send it back to the district court to address an effective assistance to counsel and decide to get a record on what counsel's actual reasons were for not objecting and to look at the arguments that the government has made and that we've made with respect to prejudice and make that decision. So you're asking us to decide the double jeopardy question as a stand-alone issue and then send back to the district court whether it was? Yes. I'm arguing that this is not an appropriate case to say, well, we're not sure about the legal issue, but we're going to say that you lose on deficient performance or you lose on prejudice because so much of the focus of the case all along has been on the underlying legal issue. So let's get that right, and I've made my arguments on why we've been. Part of our problem here that the district judge issued an opinion that simply said for the reasons set forth in the government's response. Yes, but I think the real issue is that that government response only looked at the underlying, the double jeopardy issue and didn't grapple with any of the sort of arguments that the government is making here now about deficient performance. The second point I want to make is that my friend argued that the 924C statute is totally different because of the harshness of that statute with the way that the penalties are structured there. But the structure is different here, but it's the same kind of harshness, and this case illustrates it. You've got the entire bank fraud with all the banks and all the customers adding up to four or five years. Isn't the difference you only have one two-year mandatory consecutive sentence as opposed to the firearm statute that makes that second offense a mandatory 25 years? Yes, but there's a difference that there's two mandatories potentially under 924C and one under 1028A, but I don't think that that distinction is one that sheds any light on what they thought that use in relation to means, whether they thought that you could have more than one of these consecutive sentences arising from the same predicate. I don't think that that helps to answer that question. It's a difference, but it's not a difference that's relevant to the ambiguity. And you can get the same harshness here because you end up with, under the government's interpretation, you can end up with third-rate bank fraudsters who are being sentenced as if they were international terrorists because they're writing checks for 25 customers, 25 individuals. That's 50 years in prison. If it had been 100 people on the spreadsheet of people that there are... Now we're talking about cruel and unusual punishments. You haven't raised that, have you? Well, no, and that's not my argument, but my argument is that that's an indication that this is not what Congress intended. And I point to the House report that my friend cited. The sponsor, Mr. Schiff, one of the sponsors of this bill, said the following. He said, in the case of 924C, he's referring to 924C as influencing it, mandatory minimums for carrying a firearm in the case where we have sort of out-of-control proliferation of crime and this compressing of the predicate crime and the identity theft. The point that the sponsor was making is, under the existing law, there was no incentive to even charge identity theft because it just ended up getting compressed, in his words, into the original sentence. And so the purpose was simply to try and create an incentive to charge it in the first place. And he said, what we're trying to do here is to arrive at an adequate deterrent, but not an excessive deterrent. We don't want to clog the prisons. And that supports the interpretation that says, look, there may be 25 checks here instead of one, but we're not trying to raise this guy's sentence from five years to 55 years, but we're trying to make sure that there is some deterrent, that there's some incentive for prosecutors to charge the identity theft in the first place. And so that's what we think the legislative history shows. But the bottom line, the question here is, why would Congress adopt the exact same language that had already been interpreted by the courts to prohibit something if their intention was to have a statute that allowed something? Ultimately, the government's position doesn't make any sense. Thank you. Thank you, Mr. Chairman. Thank you. Thank you. Thank you. When I looked at the minutes that came out about today, I saw that we had both Mr. Sigler and Mr. Zorn. It was really, at least for me, a delight. Two of the finest attorneys and advocates that have ever come before me in my business. Yeah. So it really is a delight. And so in terms of this, believe me, this is not the way it always is. But these are two very, very fine and exceptional attorneys. Always a pleasure to have you both here.